UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

HICA EDUCATION LOAN )
CORPORATION, )
 )
     Plaintiff )
 )
v. )    No. 2:11-cv-146-NT
 )
DANA WEBSTER, )
 )
     Defendant )

**RECOMMENDED DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT AND MEMORANDUM DECISION ON MOTION TO STRIKE**

Both sides in this action to collect on student loans move for summary judgment. The defendant also moves to strike an affidavit submitted by the plaintiff in support of its motion. I deny the motion to strike and recommend that the court grant the plaintiff's motion for summary judgment.

**I.    Motion to Strike**

The defendant seeks to strike the declaration of Jaqueline McDonnell that was filed by the plaintiff with its response to the defendant's statement of material facts. Defendant Dana Webster's Motion to Strike Declaration of Jaqueline McDonnell ("Motion to Strike") (Docket No. 21). She argues that this is required because the declaration contradicts earlier deposition testimony by a designated representative of the plaintiff. *Id*. at 1-2.

"When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed."

1

*Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4-5 (1st Cir. 1994). Here, the defendant contends that the plaintiff's designated corporate representative, Robin Zimmerman, testified at a deposition conducted pursuant to Fed. R. Civ. P. 30(b)(6) "that Plaintiff did not know how to calculate the interest rate that applies to the amount due under the Note and, indeed, never attempted to properly calculate the interest rate applicable to the Note." Motion to Strike at 1.

She objects that "a previously unidentified witness[,]" Jaqueline McDonnell, now "purports to offer a detailed explanation of the manner in which Plaintiff allegedly calculated the changes in the interest rate for Defendant's loan." *Id*. at 2. This, she contends, is a subsequent sworn statement that contradicts the plaintiff's "own prior deposition testimony." *Id*. The following is the deposition testimony upon which she relies;

> Q. But just as a lay person, how would I – if I wanted to figure out at any given time what the interest rate is, how would I do that?
> A. I have no idea.
> Q. Do you know who would know?
> A. No.
> Q. Do you know who actually calculated the interest rate for Dr. Webster's loan?
> A. It comes from the Secretary and the T Bill[;] we[']re notified by the Department of Health and Human Services of what that is every quarter.
> Q. And what are they basing that on?
> A. I have no idea. Treasury Bill – as it states, Treasury Bill through 3 percent up to the nearest 1/8th.

Deposition of HICA Education Loan Corporation by Robin Zimmerman (Docket No. 21-1), at 18:11-25.

The defendant apparently objects to paragraphs 3-5 and 6-10 of the McDonnell declaration, which the defendant describes as providing an explanation of the process used to calculate the rate of interest applicable to the defendant's loan and therefore "at variance with the prior deposition testimony of its Rule 30(b)(6) designee, Robin Zimmerman." Motion to Strike at 4. The specified paragraphs of the declaration provide as follows:

3. By virtue of my position with Sallie Mae, I have access to Sallie Mae's CLASS loan servicing system ("CLASS") and knowledge of how interest rates are calculated for the loans serviced by Sallie Mae that are to be entered into CLASS. I supervise [the] L[oan] A[accounting] D[epartment], which calculates and provides the rates to be entered into CLASS based on accurate and detailed procedures.

4. According to CLASS, Sallie Mae services a loan owed by HICA made to Dana J. Webster, the Defendant in this case, with a repayment period that began on January 15, 2002 and with an initial total disbursement amount of $186,656.97 (the "Subject Loan").

5. CLASS uses Interest Rate Index Types to assign the appropriate index to the variable rate loans serviced by Sallie Mae. The Interest Rate Index Type is used to define the instrument (such as the 91-day T-Bill) as well as the method used (such as quarterly average from prior quarter) to calculate the appropriate index.

6. According to CLASS, the Subject Loan is classified as an Interest Rate Index Type QT 1004.

7. The QTI004 Index Type is updated quarterly in CLASS on January 1, April 1, July 1, and October 1. It is based on the average of the bond equivalent rates for the 91-day U.S. Treasury bills ("T-bills") auctioned during the preceding quarter. T-bills are auctioned on Mondays and issued on Thursdays (except for holidays).

8. An employee from LAD obtains the bond equivalent rates (also known as the "investment rates") from the past quarter directly from the U.S. Treasury Department's website and inputs this information into a spreadsheet which calculates the average investment rate for that quarter. For example, see the screen printout from www.treasurydirect.gov attached hereto as **Exhibit A** which shows investment rates for the 91-day U.S. Treasury bills for the quarter ending December 31, 2010.

9. Due to the criticality of this process, a second party in LAD ratifies the average investment rate before it is sent to the Customer Profile Services department at Sallie Mae which inputs the average investment rate (the index) into CLASS each quarter.

10. The Guarantor Relation & Compliance department at Sallie Mae receives a memo from the Department of Health and Human Services at the end of every quarter which announces the average bond equivalency rate for 91-day U.S. Treasury Bills auctioned during the preceding quarter.

Declaration of Jaqueline McDonnell ("McDonnell Decl.") (Docket No. 16-1) ¶¶ 3-5, 6-10.

The defendant points out, correctly, Motion to Strike at 1, that her notice of the Rule 30(b)(6) deposition of the corporate plaintiff included the following list of areas to be covered during the deposition:

1. Plaintiff's alleged ownership of the loan at issue in this case;
2. The alleged consolidation of the loans which together are purported to equal the amount claimed by Plaintiff;
3. The method used to track payments;
4. Whether the obligations under the promissory note dated January 7, 2002 (the "Note") are transferrable;
5. The calculation of the interest rate with respect to the Note;
6. The calculation of changes in interest and their application to the loan balance;
7. Plaintiff's alleged purchase of the Note from Sallie Mae and the purchase price paid and the documents evidencing such purchase;
8. Plaintiff's post-acquisition handling of promissory notes and other accounts it purchases from Sallie Mae and other lenders or financial institutions; and
9. Plaintiff's compliance with Maine law and any consumer protection laws, including those applying to debtors.

Defendant Dana Webster's First Amended Notice to Take Oral Deposition of HICA Education Loan Corporation (Docket No. 21-4) at 2.

It is also true that the substance of the McDonnell declaration addresses items 5 and 6 on this list. However, that does not end the analysis. Trial by ambush has been disfavored in the federal courts for many decades. If counsel for the defendant believed that the individual designated by the plaintiff to testify concerning one or more of the listed items did not give adequate answers with respect to that item, counsel was obligated to inform opposing counsel of that fact. If opposing counsel did not agree, the matter should then have been brought to the court in a timely fashion as a discovery dispute. Counsel may not deem a discovery response

4

insufficient, remain silent and wait until the close of discovery, and then use the allegedly insufficient response as the basis for a claimed entitlement to summary judgment.

In addition, the defendant's characterization of the testimony at the Rule 30(b)(6) deposition as admitting "that Plaintiff did not know how to calculate the interest rate that applies to the amount due under the Note and, indeed, never attempted to properly calculate the interest rate applicable to the Note[,]" Motion to Strike at 1, is incorrect. The portion of the deposition the defendant cites in support of this assertion is devoid of support for the second assertion, and all that the deponent said was that she could not tell counsel how to calculate the actual interest rate for the defendant's loan, not that no employee of the corporate defendant could do so.

As was the case in *James v. GMAC Mortgage LLC*, 772 F.Supp.2d 307, 317 (D. Me. 2011), even if the testimony had been correctly characterized, the defendant cites no authority for the necessarily-implied predicate to her attack, that the *Colantuoni* prohibition extends to different individuals employed by the same party. Moreover, it is not necessary to reach this question because the McDonnell declaration does not contradict the deposition testimony.[1] "Additional information may be provided by an affidavit submitted in opposition to a motion for summary judgment so long as the affiant did not testify at deposition that no such additional information existed." *RLI Ins. Co. v. Berry, Dunn, McNeil and Parker LLC*, No. 02-175-P-H, 2003 WL 21210297, at *5 (D. Me. May 22, 2003). That is precisely what happened here.

The defendant's motion to strike is denied.

---

[1] Nor, for that matter, may the deponent's responses fairly be characterized as "clear answers to unambiguous questions," as *Colantuoni* requires. *Id.*

## II. Motions for Summary Judgment

### A. Applicable Legal Standard

#### 1. Fed. R. Civ. P. 56

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." *Rodríguez-Rivera v. Federico Trilla Reg'l Hosp. of Carolina*, 532 F.3d 28, 30 (1st Cir. 2008) (quoting *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008)). "A fact is material if it has the potential of determining the outcome of the litigation." *Id.* (quoting *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Santoni,* 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(c). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

"This framework is not altered by the presence of cross-motions for summary judgment." *Cochran v. Quest Software, Inc.*, 328 F.3d 1, 6 (1st Cir. 2003). "[T]he court must mull each motion separately, drawing inferences against each movant in turn." *Id.* (citation omitted); *see also, e.g., Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996) ("Cross motions for summary judgment neither alter the basic Rule 56 standard, nor warrant the grant of summary judgment *per se*. Cross motions simply require us to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed. As always, we resolve all factual disputes and any competing, rational inferences in the light most favorable to the [nonmovant].") (citations omitted).

## 2. Local Rule 56

The evidence that the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the local rules of this district. *See* Loc. R. 56. The moving party must first file a statement of material facts that it claims are not in dispute. *See* Loc. R. 56(b). Each fact must be set forth in a numbered paragraph and supported by a specific record citation. *See id*. The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]" Loc. R. 56(c). The nonmovant likewise must support each denial or qualification with an appropriate record citation. *See id*. The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation. *See id*. The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered

paragraphs" of the nonmovant's statement. *See* Loc. R. 56(d). Again, each denial or qualification must be supported by an appropriate record citation. *See id*.

Failure to comply with Local Rule 56 can result in serious consequences. "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." Loc. R. 56(f). In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact." *Id.*; *see also, e.g., Sánchez-Figueroa v. Banco Popular de P.R.*, 527 F.3d 209, 213-14 (1st Cir. 2008); Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]").

### B. Factual Background

The parties' statements of material facts, credited to the extent either admitted or supported by record citations in accordance with Local Rule 56, reveal the following relevant facts.[2]

This action arises out of a single promissory note dated January 7, 2002 (the "Note"). Statement of Undisputed Material Facts in Support of Defendant Dana Webster's Motion for Summary Judgment ("Defendant's SMF") (Docket No. 9-1) ¶ 1; Plaintiff's Opposing Statement of Material Facts with Additional Facts ("Plaintiff's Responsive SMF") (Docket No. 15) ¶ 1. The defendant signed the note on January 7, 2002; it is payable to the Student Loan Marketing Association, in the original amount of $186,656,97. Statement of Material Facts in Support of

---

[2] To the extent that I have incorporated one of the parties' qualifications into the statement of the other, I have determined that the qualification is supported by the record citation(s) given.

Plaintiff's Motion for Summary Judgment ("Plaintiff's SMF") (Docket No. 10) ¶ 1; Defendant Dana Webster's Opposing Statement of Material Facts ("Defendant's Responsive SMF") (Docket No. 13) ¶ 1.

The Note has a variable rate of interest. Defendant's SMF ¶ 2; Plaintiff's Responsive SMF ¶ 2. With respect to the interest rate, the Note provides:

> [I]nterest shall accrue and be payable at a yearly rate of interest which may not exceed a variable rate calculated by the Secretary of the Department of Health and Human Services for each calendar quarter computed by determining the average of the bond equivalent rates for the ninety-one day U.S. Treasury Bills auctioned during the preceding quarter, plus three percent rounding this figure up to the nearest one-eighth of one percent. *The rate of interest applied to this Note shall be the ninety-one day U.S. Treasury Bill auctioned during the preceding quarter, plus three percent, rounding this figure up to the nearest one-eighth of one percent.*

*Id*. ¶ 3 (emphasis in original).

The plaintiff says that the paragraph quoted above describes the rate at which interest is calculated under the Note. *Id*. ¶ 4. The purpose of this paragraph is also to indicate that the interest rate will not exceed the rate specified. *Id*. ¶ 5. The calculation of the interest rate on the Note is provided to the plaintiff by the Secretary of Health and Human Services. *Id*. 6.

The variable interest rate that has been applied to the principal balance owed under the Note to determine the amount of interest owed by the defendant has been the average of the bond equivalent rates for the ninety-one day U.S. Treasury bills auctioned during the preceding quarter plus three percent, rounding this figure up to the nearest one-eighth of a percent. Plaintiff's Statement of Additional Facts ("Plaintiff's Additional SMF") (included in Plaintiff's Responsive SMF, beginning at 3) ¶ 1; Dana Webster's Reply Statement of Undisputed Material Facts in

Support of Her Motion for Summary Judgment ("Defendant's Reply SMF") (Docket No. 20) ¶ 1.[3]

## C. Discussion

The plaintiff seeks in this action to collect on the Note, alleging that the defendant has failed to make payments as they have become due and, therefore, is in default. Complaint (Docket No. 1) ¶¶ 9-10. Because the defendant denies both that the plaintiff owns the loan and is entitled to collect and that she is in default, Defendant's Responsive SMF ¶¶ 2-3, it is necessary to begin with those necessary prerequisites to any recovery by the plaintiff.

### 1. Ownership of the Note

The defendant denies that the plaintiff is the owner or holder of the Note because the same person, as "authorized agent," signed the bill of sale upon which the plaintiff relies, and the plaintiff "has offered no explanation regarding how or why Ms. Knoche could have simultaneously acted as the Seller and the Purchaser of the Note at issue. As such, the evidence offered by Plaintiff to support its ownership of the Note it seeks to enforce does not establish that fact as undisputed." Defendant's Responsive SMF ¶ 2. The defendant cites no authority to support this argument.

In fact, First Circuit precedent is to the contrary. "[W]hile the practice is generally disfavored, an agent may act on behalf of adverse parties to a transaction so long as both parties know of the agent's dual capacity and consent to it." *Jerlyn Yacht Sales, Inc. v. Wayne R. Roman Yacht Brokerage*, 950 F.2d 60, 64 n. 8 (1st Cir. 1991). The defendant has made no

---

[3] The defendant purports to qualify this paragraph of the plaintiff's additional statement of material facts, but she does not challenge the substance of the factual assertion made by the plaintiff in this paragraph, nor does she expand upon it. Rather, she contends that the document that the plaintiff cites in support of the paragraph "was not authenticated or identified as a true and correct copy of what it purports to be" and constitutes hearsay as well. Defendant's Reply SMF ¶ 1. Because the plaintiff does not challenge the truth of the factual assertion in any way, I deem it admitted.

attempt to suggest that either the Student Loan Marketing Association ("Sallie Mae") or the plaintiff, the two parties to the sale, Bill of Sale and Blanket Endorsement (attached to Declaration of Kim Peace in Support of Plaintiff's Motion for Summary Judgment ("Peace Decl.") (Docket No. 10-6), at 1, did not know of Knoche's dual capacity and/or did not consent to it. Accordingly, there is no support for the defendant's conclusion that the ownership of the Note is disputed because the fact that the same person signed the bill of sale as agent for both the seller and the buyer is "not explained."

The defendant also objects to the plaintiff's citation to the bill of sale because "that document fails to satisfy the so-called 'Best Evidence Rule' contained in Rule 1002 of the Federal Rules of Evidence." Defendant's Responsive SMF ¶ 2. She asserts that the copy of the bill of sale that was submitted by the plaintiff "is not the original and, indeed, is not even an acceptable duplicate insofar as it contains significant redactions." *Id.* To the contrary, the bill of sale contains no redactions whatsoever. Bill of Sale (included in Docket No. 10-6). The redactions in the documents attached to the bill of sale have clearly been made to protect the identities of other borrowers or to block out the defendant's address and telephone numbers. They are not otherwise "significant."

The defendant again cites no authority in support of her argument. Federal Rule of Evidence 1002 provides, in full:

> To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress.

Fed. R. Evid. 1002. The rule immediately following, not mentioned by the defendant, "otherwise provide[s]":

> A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in

> the circumstances it would be unfair to admit the duplicate in lieu of the original.

Fed. R. Evid. 1003.

Here, the defendant has not raised any question as to the authenticity of the original bill of sale or its attachments. In addition, the Peace declaration states under oath that the copy of the bill of sale, the only document challenged by the defendant, Defendant's Responsive SMF ¶ 2, is a "true cop[y]" of the original. Peace Decl. ¶ 3. The defendant's objection cannot reasonably be construed to invoke the second exception in Rule 1003. *See generally United States v. Enzinger*, No. 2:11-CR-62-DBH, 2011 WL 4459103, at *1 (D. Me. Sept. 23, 2011); *United States v. Young*, No. CR-09-140-B-W, 2010 WL 1418746, at *2 (D. Me. Apr. 6, 2010). The Peace declaration also establishes that the bill of sale is a business record of the plaintiff, removing any possibility that it is inadmissible hearsay. *Id.*; Fed. R. Evid. 803(6).

The defendant has not raised any legitimately disputed issue of material fact with respect to the ownership of the Note. The record establishes that the Note is held by the plaintiff.

### 2. Default on the Note

The defendant denies the following paragraph in the plaintiff's statement of material facts: "Defendant defaulted under the terms of the Note." Plaintiff's SMF ¶ 3. The defendant's purported denial provides, in its entirety:

> Denied. Whether Defendant defaulted under the terms of the Note is a legal determination that must be made based on the application of facts to the terms of the Note. Moreover, the record reference offered by Plaintiff to support this statement of fact does not establish what Plaintiff purports to assert. Specifically, the complete text of Exhibit PMSJ-7, Response No. 13 provides:

> Defendant admits that she has not made one or more payments related to the promissory note referred to in request numbers 1. and 2. However, Defendant lacks knowledge or information regarding how many or specifically which payments she has not made.

> Moreover, Defendant has requested and Plaintiff has not yet proffered its calculations regarding the alleged loan balance, so Defendant cannot say whether the amounts claimed by Plaintiff are due and payable. Further, Defendant lacks knowledge of whether Plaintiff is the owner of that note at issue and, therefore, is not able to admit or deny whether any amount is due and owing to Plaintiff. Defendant has made reasonable inquiry and the information she knows or can readily obtain is insufficient to enable her to admit or deny.
>
> Id. See, e.g.[,] Kim v. Me. Dep't of Corr., 2011 U.S.Dist. LEXIS 105915, *15 (sustaining defendants' objections to statements of fact and excluding them as conclusory in nature and lacking factual content). For the reasons articulated above, Defendant objects to this statement of fact in addition to denying it.

Defendant's Responsive SMF ¶ 3.[4]

The first problem for the defendant with regard to her argument is that the paragraph of the plaintiff's statement of material facts at issue does not cite only one record reference. In addition to the reference reproduced by the defendant, the plaintiff also cited to the transcript of the plaintiff's deposition and the Peace declaration. Plaintiff's SMF ¶ 3. The cited portions of the deposition transcript are the defendant's statements that she "probably" had not made any payments on the Note since January 2004, Partial Transcript (Docket No. 10-8) at 14; that "things stopped being paid" at approximately that time, *id*. at 17-18; and that she has no evidence suggesting that she made any payments on the Note after January 2004, *id*. at 24. It is a customary feature of promissory notes that failure to pay when payment is due constitutes a default, and the language of the Note at issue here is no different. Under the heading "DEFAULT," the Note states: "If I do not make payments when due, my loan may be declared in default." Promissory Note (attached to Peace Decl., Docket No. 10-6) at [5].

---

[4] Nothing in the case cited by the defendant, *Kim v. Maine Dep't of Corr.*, No. 1:10-cv-00443-DBH, 2011 WL 4381551, at *5 (D. Me. Sept. 19, 2011), requires an outcome different from the one reached here. Paragraphs 2 and 3 of the plaintiff's statement of material facts are neither unduly or improperly conclusory nor lacking in factual content.

In addition, paragraph 4(c) of the Peace declaration states: "Defendant has defaulted in her promise and agreement to repay the sums described in the Note because she has failed to make the payments that are due and owing under the terms of the Note[.]" Peace Decl. ¶ 4(c). That sworn statement alone, unchallenged by the defendant, is sufficient to support paragraph 3 of the plaintiff's statement of material fact and to require that the defendant's denial of that paragraph be stricken. *See also HICA Educ. Loan Corp. v. Marino*, Civil Action No. 11-433, 2011 WL 6292257, at *2 (D. N.J. Dec. 14, 2011) (non-payment constitutes default under note); *HICA Educ. Loan Corp. v. Lapetina*, Civil No. 08-1781 (SEC), 2009 WL 5062034, at *2 (D. P. R. Dec. 15, 2009) (same).

### 3. The Merits

Much of the defendant's argument depends on conclusions that I have already rejected: that the plaintiff "has conceded that it does not know how to calculate the interest rate that applies to the amount due under the Note," "never performed its own calculations and, instead, relied on figures provided by the Secretary of the Department of Health and Human Services"; and "concedes that it has never attempted to properly calculate the interest rate applicable to the Note." Defendant Dana Webster's Motion for Summary Judgment ("Defendant's Motion") (Docket No. 14) at 1-2.[5] These assertions place far too much weight on the Zimmerman deposition testimony, weight that it cannot bear, rely upon a flawed litigation strategy, as I have already discussed, and do not fairly characterize Zimmerman's testimony.

---

[5] As the plaintiff correctly points out, Plaintiff's Response in Opposition to Defendant Dana Webster's Motion for Summary Judgment (Docket No. 14) at 6-7, all of the defendant's arguments address only the interest rate on the principal of the Note. She asserts in conclusory fashion that the shortcomings she identifies in the plaintiff's calculation of interest due "mean that none of its balance calculations, whether of principal or interest, can be relied upon." Defendant Dana Webster's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment (Docket No. 12) at 8. She cites no authority for this conclusion and does not explain it further. In any event, I agree with the plaintiff that, even if the defendant were correct in her arguments about the interest rate, the plaintiff would be entitled to judgment in the amount of the principal. The principal amount was set at the time the Note was executed.

The only argument made by the defendant that does not depend on her version of the Zimmerman testimony is a contention that the language of the Note with respect to the interest rate is so vague and ambiguous that it cannot be enforced as a matter of law. *Id*. at 3-6. She asserts that the interest terms of the Note "do not provide any means of calculating what the applicable variable interest rate is at any given time; they merely contain a general description that cannot be mathematically tied to a particular number on a particular date." *Id*. at 3. She bases this conclusion on her parsing of the language of the term of the Note dealing with interest, which I reproduce here for ease of reference:

> [I]nterest shall accrue and be payable at a yearly rate of interest which may not exceed a variable rate calculated by the Secretary of the Department of Health and Human Services for each calendar quarter computed by determining the average of the bond equivalent rates for the ninety-one day U.S. Treasury Bills auctioned during the preceding quarter, plus three percent rounding this figure up to the nearest one-eighth of one percent. *The rate of interest applied to this Note shall be the ninety-one day U.S. Treasury Bill auctioned during the preceding quarter, plus three percent, rounding this figure up to the nearest one-eighth of one percent.*

Defendant's SMF ¶ 3; Plaintiff's SMF ¶ 3.

The defendant contends that the italicized language of the second sentence in this paragraph "describes the actual calculation of interest using a different method than is described in the preceding 'not-to-exceed' provision[]" because what she calls "the applicable rate" described in the italicized sentence "is conspicuously missing the 'average' language" of the first sentence "and, because of that omission, actually refers to a rate that cannot be calculated, given that there are many ninety-one day U.S. Treasury Bill auctions each quarter." Defendant's Motion at 4.[6]

---

[6] The defendant "respectfully requests that this Court take judicial notice of the fact that there are multiple auctions relative to nine-one day Treasury bills during each quarter." Defendant's Motion at 4 n.2. She does not offer any

Contrary to the defendant's assertion, it is not "nonsensical and redundant to have an NTE rate [the defendant's shorthand for the rate to which the first, unitalicized sentence of the paragraph set forth above refers] that is identical to the applicable rate at all times." *Id.* The first sentence of the paragraph sets a cap on the interest rate. The second sentence states that the interest will be calculated in a manner that assures that the interest rate that will be applied will not exceed the cap, but will equal it, so that the rate does not violate the statute governing the program under which the defendant borrowed the funds that are the subject of the Note. *See* 42 U.S.C. § 292d(b). In addition, the fact that the second sentence is missing the word "average" is not fatal. If, in fact, there are multiple auctions of ninety-one day Treasury bills during each calendar quarter, only an average of the interest rates on those bills would make sense.

The defendant's interpretation of the interest terms of the Note renders the second sentence meaningless, in contravention of the bedrock principle of contract law that a contract should not be construed in a manner that renders one or more of its provisions meaningless. *OfficeMax, Inc. v. Levesque*, 658 F.3d 94, 98 (1st Cir. 2011).

The defendant argues, without citation to authority, that under the plaintiff's interpretation of the interest term in the Note "the borrower would always pay the maximum amount of interest allowable under the terms of the Note, the cap created by the NTE would be meaningless, and the resulting interest provision would be unconscionable." Defendant Dana Webster's Reply Memorandum in Support of Motion for Summary Judgment (Docket No. 19) at 1. This argument bespeaks very little experience with the federal government, many of whose agencies do all that they can to maximize revenue. Nor does this interpretation render the first sentence, which merely recites the statutory maximum rate, meaningless. And, the defendant

---

reason why she could not have presented that allegedly factual information in her statement of material facts, as Local Rule 56 requires.

fails to explain how routinely charging the maximum allowable rate of interest is *per se* unconscionable. Neither the connection between the two nor the asserted inevitability of that connection is readily apparent.

The parties make glancing mention of affirmative defenses pleaded by the defendant, but the defendant proffers no reason why she is entitled to summary judgment based on any of those defenses, other than any that have already been discussed above.

### III. Conclusion

The defendant's motion to strike is **DENIED**. For the foregoing reasons, and on the showing made, I recommend that the defendant's motion for summary judgment be **DENIED** and that of the plaintiff **GRANTED.**

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 27th day of January, 2012.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge